UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES | : | 16 Cr. 154 (KBJ) |
| v. | : | |
| LUZ IRENE FAJARDO CAMPOS | : | |
| Defendant. | : | |

## DEFENDANT'S MOTION *IN LIMINE* CONCERNING DEFENDANT'S RECORED JAIL CALL

### INTRODUCTION

On or about November 12, 2019, the Government advised the defense (for the first time) that it intended to introduce a recording of one of defendant Luz Fajardo Campos' jail calls into evidence, for the purpose of asking the jury to "compare" the voice on the recording with other recorded conversations in the case. The calls were obtained as the result of an administrative subpoena served by the Drug Enforcement Administration (DEA) on the District of Columbia Correctional Treatment Facility on February 1, 2019 – or just a few days before the trial of this case was originally scheduled to commence. As set forth in greater detail herein, administrative subpoenas are investigative tools, not a vehicle for the Government to obtain evidence for use at trial. Even assuming *arguendo* the legitimacy of the administrative subpoena, whatever materials the DEA obtained from the CTF would be potentially admissible in that "investigation," but should not be used at the trial of the charges in this case.

### FACTUAL SUMMARY

On or about February 1, 2019, the Drug Enforcement Administration served an administrative subpoena on the DC Correctional Treatment Facility (CTF), which demanded that:

1

Pursuant to a lawful investigation of violations of the Controlled Substance Act, 21 U.S.C. Section 801 et seq. please provide a copy of the recorded calls for inmate LUZ FAJARDO-Campos, DOB (redacted) USMS (redacted), PDID Number (redacted), from November 1, 2018 to present.

The subpoena stated that it was issued pursuant to 21 U.S.C. Section 876, ordered the custodian of records produce the phone calls in Tucson, Arizona by February 12, 2019, but provided that in lieu of a personal appearance, the material could be sent via email to the requesting DEA special agent. Finally, the subpoena warned that the failure to comply would render the recipient "liable to proceedings in the district court of the United States to enforce obedience. . . . " (a redacted copy of the subpoena is attached hereto as Exhibit 1).[1] It is not clear when the recorded jail conversations were produced to the Government, but they were provided to the defense on April 23, 2019. The accompanying discovery letter from the Government did not indicate that the prosecutors planned to use the calls at the upcoming trial of this case.

It was not until almost six and one half months later, on November 12, 2019, that the defense was notified for the first time that the Government wanted to use one of the calls as a "voice exemplar," so that the jurors could compare it with other putative recordings of her voice. In that regard, the Government indicated in an email dated November 13, 2019, that unless the defense stipulated as to the authenticity of the phone call, they will "have a representative from the jail testify in order to establish that it is your client's voice on the recording."[2] This would of course have the prejudicial effect of alerting the jury that the defendant was incarcerated.

The parties in this case very recently met to discuss the upcoming trial and defense counsel indicated that it objected to the introduction of the jail call and intended to file the instant

---

[1] The subpoena excluded from production any phone calls to undersigned defense counsel, but did not exclude any other members of the defense team. The exhibit was redacted to remove reference to the defendant's personal information.

[2] The Government probably meant that it would call a jail representative to "authenticate" the phone call.

motion because the fruits of an administrative subpoena should not be admitted at the trial of this case. The parties discussed the issue, but disagree about the application of the law to the facts of this case. Thus, unfortunately, this matter will require judicial intervention.

## LEGAL ANALYSIS

Title 21 United States Code Section 876 defines the circumstances under which a Department of Justice entity such as the DEA can issue an administrative subpoena. The statute provides that

> in any investigation relating to his functions under [the Controlled Substances Act], the Attorney General may subpoena witnesses, compel the attendance and testimony of witnesses, and require the production of any records . . . which the Attorney General finds relevant or material to the investigation."

The Supreme Court has held that in order to justify an administrative subpoena, the issuing agency must demonstrate that "the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to that purpose, . . . and that the [required] administrative steps" have been completed. United States v. Stewart, 489 U.S. 353, 359 (1989). The requirement that subpoenas be used only for legitimate and authorized Government purposes prohibits the government from "engaging in arbitrary fishing expeditions." United States v. R Enterprises, Inc. 494 U.S. 292, 297 (1991).

The initial burden to satisfy these requirements is with the requesting agency. United States v. Transocean Deepwater Drilling, Inc., 767 F.3d 495, 489 (5th Cir. 2014); United States v. Zadeh, 2014 WL 11370114 at p.6 (N.D. Tex). Despite the broad authority to issue administrative subpoenas, privacy concerns under the Fourth Amendment still apply. In Re McVane, 44 F.3d 1127, 1137 (2d. Cir. 1995)(agency subpoenas directed at individuals do implicate privacy rights).

In this case, it is not entirely clear what "investigation" the DEA was conducting with respect to the Controlled Substances Act or how access to the defendant's jail calls would further

any such inquiry. Moreover, even a neutral observer such as this Court might wonder about the coincidence of the Government deciding to issue an administrative subpoena for the defendant's recorded jail calls on the eve of her previously scheduled trial. In the recent decision in <u>United States v. Apodaca</u>, 251 F.Supp.3d 1 (D.D.C. 2017), Chief Judge Howell ruled that the Government could obtain recorded jail calls from an inmate incarcerated at the D.C. Jail via an administrative subpoena under similar circumstances, when it represented to the Court that

> although the defendants in this matter have already been indicted for alleged violations of the Controlled Substances Act, they continue to be investigated for past, present, and future violations of that Act. This description suffices to meet the threshold requirement for enforcement of the administrative subpoenas at issue here.

<u>Apodaca,</u> 251 F.Supp.3d at 11.

The *Apodaca* court, however, expressly left unresolved what use the Government could make of the recorded calls. The Chief Judge observed that:

> the Court is left to ponder what possible use the government contemplates for the jail calls other than as evidence at trial on the original indictment in this matter. . . . in light of the government's representations that evidence of additional wrongdoing is sought, as well as the Court's limited role in reviewing administrative subpoenas, the question whether, in this Circuit, an administrative subpoena may be used post-indictment to obtain evidence to be used at a trial on the charges in the pending indictment must be left for another day.

<u>Id</u>. at 12.

Thus, even assuming *arguendo* that the administrative subpoena was a legitimate use of the Government's authority, the issue left unresolved by the *Apodaca* decision is directly presented by the instant case. For the following reasons, the defense requests that this Court prohibit the Government's use of the defendant's jail phone call obtained by a DEA administrative subpoena at the trial of this case.

4

First, the Federal Rules of Criminal Procedure specifically contain a procedure that would enable the Government to obtain additional evidence for use at trial. Rule 17 provides as follows:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Thus, the Rule authorizes either party in a criminal case to issue a subpoena and require a witness to produce evidence at trial. Moreover, the Rule permits the Government to seek to obtain information - potentially including a defendant's recorded jail phone calls, even before the trial commences - upon an application to the Court and a specific showing that the materials sought contain "relevant and admissible evidence" and was not a general "fishing expedition" designed to obtain "discovery." United States v. Binh Tang Vo, 78 F.Supp.3d 171, 181 (D.D.C. 2015). This Court should not allow the Government to use the expedient of an administrative subpoena to "end run" the federal criminal rules.

Second, affirming the procedure used by the Government would further exacerbate the already existing disparity in the relative power of the parties to prepare for a criminal trial. Only the Government has administrative subpoena power. Thus, for example, if the defense wanted to obtain the recorded jail phone calls of the Government's cooperating witnesses before trial, its only recourse would be to satisfy the more stringent requirements of Rule 17, by demonstrating before a judicial officer the specific reasons why the calls would contain relevant and admissible evidence. In sharp contrast, the Government gets to proceed in secret, with no contemporaneous judicial review of its conduct.

To be fair, several courts have approved the Government's use of administrative subpoenas to obtain information after the return of an indictment. See United States v. Harrington, 7861 F.2d 1482, 1485 (2d Cir. 1985); United States v. Lazar, 2006 WL 3761803 (W.D. Tenn.). There is also, however, much more persuasive contrary caselaw that prohibited the Government from obtaining evidence via an administrative subpoena at a trial. See United States v. O'Connor, 118 F.Supp. 248 (D.Mass.1953) (district court refused to enforce IRS whose purpose was to obtain information to aid Department of Justice in pending criminal trial).

In Application of Myers, 212 F.Supp. 202 (E.D. Pa. 1962), the district court refused to enforce IRS administrative subpoena for taxpayer who was pending criminal trial, concluding that the "Government's purpose, openly avowed, is contrary to our fundamental and deep-seated conceptions of fair play." The Court noted that the federal rules of criminal procedure did not allow the Government to obtain pre-trial discovery and that:

> The Court will not permit evasion of the traditional procedure in criminal trials embodied in the Federal Rules of Criminal Procedure by resort to the great administrative powers in aid of the revenue laws which are granted [by statute]. Such purpose of evasion clearly appears where, as here, the end sought is not the proper administration of the revenue laws but rather support for the charge against a defendant who is awaiting trial.

Myers, 212 F.Supp. at 213.

This Court should follow the reasoning of the *Myers* court and not permit the Government to gain a tactical advantage at the trial of this case by virtue of the DEA's administrative subpoena power. This is particularly true since the Government waited six and a half months after producing the recorded jail calls before alerting the defense of its intent to use them at the trial of this case.

Finally, the defense is equally concerned about the propriety of the Government introducing a "voice exemplar" for the jurors to use as the basis of making their own

To be fair, several courts have approved the Government's use of administrative subpoenas to obtain information after the return of an indictment. See United States v. Harrington, 7861 F.2d 1482, 1485 (2d Cir. 1985); United States v. Lazar, 2006 WL 3761803 (W.D. Tenn.). There is also, however, much more persuasive contrary caselaw that prohibited the Government from obtaining evidence via an administrative subpoena at a trial. See United States v. O'Connor, 118 F.Supp. 248 (D.Mass.1953) (district court refused to enforce IRS whose purpose was to obtain information to aid Department of Justice in pending criminal trial).

In Application of Myers, 212 F.Supp. 202 (E.D. Pa. 1962), the district court refused to enforce IRS administrative subpoena for taxpayer who was pending criminal trial, concluding that the "Government's purpose, openly avowed, is contrary to our fundamental and deep-seated conceptions of fair play." The Court noted that the federal rules of criminal procedure did not allow the Government to obtain pre-trial discovery and that:

> The Court will not permit evasion of the traditional procedure in criminal trials embodied in the Federal Rules of Criminal Procedure by resort to the great administrative powers in aid of the revenue laws which are granted [by statute]. Such purpose of evasion clearly appears where, as here, the end sought is not the proper administration of the revenue laws but rather support for the charge against a defendant who is awaiting trial.

Myers, 212 F.Supp. at 213.

This Court should follow the reasoning of the *Myers* court and not permit the Government to gain a tactical advantage at the trial of this case by virtue of the DEA's administrative subpoena power. This is particularly true since the Government waited six and a half months after producing the recorded jail calls before alerting the defense of its intent to use them at the trial of this case.

Finally, the defense is equally concerned about the propriety of the Government introducing a "voice exemplar" for the jurors to use as the basis of making their own

determination as to whether the defendant is one of the speakers in one of the conversations recorded by the informants in this case. The defendant is a native Spanish speaker and the recorded conversations are in Spanish, but it is very likely that all – or most – of the jurors in this case will not speak Spanish. Undersigned knows from personal experience (having learned to speak Spanish later in life) that to an English speaker, Spanish sentences sound like a string of undifferentiated sounds. Non-Spanish speakers would have trouble even identifying voice timbre and patters of speech because it is without context. The defense believes that the Government intends to ask the informant witnesses to make in-court identifications of the defendant or otherwise identify her voice on the tape recordings in this case. Under these circumstances, asking the jurors to conduct their own, individual assessments seems to be unnecessary, unwise, and erroneous.

## CONCLUSION

For all of these reasons, the defense asks this Court to grant the *Motion In Limine* and preclude the Government from introducing any of the recorded jail calls at the trial of this case.

A proposed Order is attached to this Notice for the Court's review.

Respectfully submitted,

*Robert Feitel*

_____
Robert Feitel, Esquire
Law Office of Robert Feitel
1300 Pennsylvania, Avenue, N.W.
190-515
Washington, D.C.  20008
D.C. Bar No. 366673
202-450-6133 (office)
202-255-6637 (cellular)
RF@RFeitelLaw.com

CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing was sent via ECF, to Cole Radovich, Anthony Aminoff, and Kaitlin Sahni, Narcotic and Dangerous Drug Section, 2 Constitution Square, N.W. Washington, D.C. 20005, this 20th day of November, 2019.

*Robert Feitel*

_____
Robert Feitel