**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **CRIMINAL NO. 16-154 (KBJ)** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **LUZ IRENE FAJARDO CAMPOS,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | | |

**GOVERNMENT'S MOTION FOR PRELIMINARY ORDER**
**OF FORFEITURE AND BRIEF IN SUPPORT THEREOF**

The United States of America, by and through its counsel, pursuant to Federal Rule of

Criminal Procedure 32.2(b)(2), and respectfully moves the Court to enter a preliminary order of

forfeiture as to the defendant, Luz Fajardo Campos ("defendant").

**Procedural Background**

On August 30, 2016, a grand jury returned a single-count indictment charging the

defendant with conspiring to distribute five kilograms or more of cocaine, 500 grams or more of

methamphetamine, and 1,000 kilograms or more of marijuana for importation into the United

States.  *See* Indictment (Aug. 30, 2016) (Dkt. No. 1).  In accordance with Rule 32.2(a), the

indictment contained a forfeiture notice notifying the defendant that upon conviction, "the

government will seek forfeiture . . . of all property constituting or derived from any proceeds the

Defendant obtained directly or indirectly as the result of the alleged Title 21 violation, and all

property used or intended to be used in any manner or part to commit, and to facilitate, the

commission of such offense." *Id.* at 2.  The notice further provided that the government would

seek "a sum of money equal to all proceeds the defendant obtained directly or indirectly as a result

of the Title 21 offense charged in this indictment." *Id.* at 3.  On December 20, 2018, the parties

filed a joint motion to amend the indictment, removing the marijuana distribution and narrowing

the time frame of the indictment. Dkt. No. 59; Minute Order, Jan. 1, 2019 (Oral Order Granting Motion to Amend Indictment)

The defendant went to trial from December 10, 2019, through December 18, 2019.   The evidence at trial established that the defendant participated in cocaine distribution with the Sinaloa Cartel in a variety of ways.   She obtained pilots and airplanes for the Sinaloa Cartel, for which she was paid.   She also coordinated her own cocaine flights.   Finally, she arranged to receive suitcases full of cocaine at Mexico City International Airport after they were smuggled aboard commercial flights leaving Bogota, Colombia.   One witness described the number of kilograms per suitcase, the number of suitcases per flight, and the number of flights per week.   The witness conservatively estimated that the defendant imported at least 1200 kilograms of cocaine in this manner alone.   An expert witness from the U.S. Drug Enforcement Administration ("DEA") stated that the price of a kilogram of cocaine in Mexico City at that time was approximately $15,000 per kilogram.   Moreover, the defendant frequently discussed the price she expected to receive per kilogram on cocaine in Mexico over her BlackBerry devices.   For example, in a BlackBerry conversation with her son using the screenname "activo" the defendant stated "I have at 17," meaning $17,000 per kilogram of cocaine.   *See* Gov't. Tr. Ex. 117a.   During this same conversation, the defendant send numerous pictures of kilogram bricks of cocaine with the word "Red Bull" stamped into the powder.   *See* Gov't Tr. Ex. 118-131.

The evidence at trial also demonstrated that she ran a successful methamphetamine laboratory.   She attempted to sell 20 pounds of methamphetamine in Jackson, MS, for $180,000 USD.   She also attempted to sell 4 pounds of methamphetamine in Tucson, AZ for $30,000 USD.

As described further below, the government only seeks a very conservative estimate of $18,000,000 from the defendant.

2

## Legal Argument

### A.    Forfeiture is Mandatory

Forfeiture is a mandatory element of the sentence to be imposed in this case.   The Court's jurisdiction is founded upon 21 U.S.C. § 853(a).   That section provides that a defendant "shall forfeit . . . [a]ny property constituting, or derived from, any proceeds … obtained, directly or indirectly," as the result of any Title 21 violation punishable by more than one year of imprisonment.   21 U.S.C. § 853(a)(1).   It further provides that the Court "shall order, in addition to any other sentence imposed pursuant to this subchapter or subchapter II, that the person forfeit to the United States" such proceeds.   *Id.*   The clear language of the statute reflects the mandatory nature of forfeiture in this case.   *See United States v. Blackman*, 746 F.3d 137, 143 (4th Cir. 2014) (emphasizing that forfeiture is mandatory when Congress uses the word "shall" in a statute); *United States v. Louthian*, 756 F.3d 295, 307 (4th Cir. 2014) (same).   Section 853(a)(1) thus requires the forfeiture of the proceeds of the offense that the defendant obtained.   *See* 21 U.S.C. § 853(a)(1).

Forfeiture is mandatory even when the directly traceable proceeds of the offense have been dissipated by the defendant, and the government seeks the forfeiture of substitute assets or entry of a forfeiture money judgment.   *See, e.g.*, *Blackman*, 746 F.3d. at 144 ("Imposing forfeiture on defendants who have divested themselves of their gains is therefore necessary to give full effect to the penal purposes of the forfeiture statute."); *United States v. Day*, 524 F.3d 1361, 1378 (D.C. Cir. 2008) ("We now join our sister circuits and hold that money judgments are appropriate in the criminal forfeiture context.").   Also, Rule 32.2 acknowledges that the United States may obtain a money judgment, stating "[i]f the government seeks a personal money judgment, the court must

determine the amount of money that the defendant will be ordered to pay."   Fed. R. Crim. P. 32.2(b)(1)(A).

**B.      Standard of Proof**

The appropriate standard of proof for a forfeiture determination is preponderance of the evidence, since forfeiture is part of the sentence and is not a substantive element of the offense. *See* 21 U.S.C. § 853(d); *Libretti v. United States*, 516 U.S. 29, 49 (1995) (recognizing the "nature of criminal forfeiture as an aspect of sentencing"); *United States v. Martin*, 662 F.3d 301, 307 (4th Cir. 2011) ("After conviction, the government must establish a nexus between the property for which it is seeking forfeiture and the crime by a preponderance of the evidence.").   "The [C]ourt's determination may be based on evidence already in the record . . . or information submitted by the parties and accepted by the court as relevant and reliable."   Fed. R. Crim. P. 32.2(b)(1)(B).

**C.      Forfeiture Money Judgment**

The government is seeking a money judgment as to the defendant because not all of the directly traceable proceeds of the offense are available to the United States.   As the Fourth Circuit has recognized, "[s]uch judgments would seem especially appropriate where physical assets derived from the conspiracy are no longer traceable or available."   *Blackman*, 746 F.3d at 145; *see also United States v. Butler*, 578 F. App'x 178, 183 n.4 (4th Cir. 2014) ("[F]orfeiture money judgments in criminal cases are not only permissible but are required when the defendant has spent or divested himself . . . of the gains at issue.").

Based upon the evidence produced at trial, a money judgment of $18,000,000.00 is justified.   As the evidence proved, the defendant was the leader of a drug trafficking organization operating under the Sinaloa Cartel.   She was responsible for the distribution of thousands of kilograms of cocaine, and many pounds of methamphetamine.   She was also paid for providing

4

pilots and procuring aircraft.   The testimony of the cooperating witness who identified at least 1200 kilograms of cocaine that the defendant imported using suitcases on commercial aircraft generates $18,000,000.00 using the conservative price of $15,000 USD per kilogram ($15,000 x 120 = 18,000,000).   Therefore, that testimony alone is sufficient to support the requested money judgment of $18,000,000.00 and does not include payments received for procuring pilots or aircraft, any methamphetamine distribution, or any amounts received by the defendant for the importation and distribution of methamphetamine precursor chemicals.

**E.     Procedure for Entering a Preliminary Order of Forfeiture**

Rule 32.2 provides that, at sentencing, a preliminary order of forfeiture becomes final as to the defendant.   *See* Fed. R. Crim. P. 32.2(b)(4)(A).   Therefore, a preliminary order of forfeiture must be entered as to a defendant at the time of sentencing, at the latest.   The government is not requesting a hearing and is asking the Court to determine this matter on the pleadings.   However, if either party requests a hearing on the forfeiture, "the court must conduct a hearing."   Fed. R. Crim. P. 32.2(b)(1)(B).   Moreover, the Court "must include the forfeiture when orally announcing the sentence or must otherwise ensure that the defendant knows of the forfeiture at sentencing."   Fed. R. Crim. P. 32.2(b)(4)(B).   Likewise, the Court "must . . . include the forfeiture order, directly or by reference, in the judgment."   *Id.*

//

//

//

//

//

//

## **CONCLUSION**

For the foregoing reasons, the United States requests that the Court enter a Preliminary Order of Forfeiture that includes a money judgment of $18,000,000.00, representing the proceeds of the offense of conviction.

Respectfully submitted,

Marlon Cobar, Acting Chief
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice

_____/s/_____
Anthony T. Aminoff
Cole Radovich
Kaitlin Sahni
Trial Attorney
Narcotic and Dangerous Drug Section
Criminal Division, U.S. Department of Justice
145 N Street, N.E., Washington, D.C. 20530
(202) 616-2379
Anthony.Aminoff@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 11, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing (NEF) to all counsel of record.

_____/s/_____

Anthony T. Aminoff
Trial Attorney