**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **LUZ IRENE FAJARDO CAMPOS,**<br>        **Petitioner,**<br><br>        **v.**<br><br>**UNITED STATES,**<br>        **Respondent.** | **Civil Action No. 26-355 (JDB)**<br><br>**Criminal Action No. 16-154 (JDB)** |

**<u>MEMORANDUM OPINION</u>**

Fajardo Campos, a federal prisoner, was convicted after a jury trial for conspiracy to import cocaine and methamphetamine into the United States.  She now moves collaterally to vacate her sentence under 28 U.S.C. § 2255 on the grounds that her trial and appellate counsel were constitutionally ineffective.  In the alternative, she seeks an evidentiary hearing so that she may bolster her claims.  She also moves for the appointment of counsel.  However, the record conclusively shows that trial counsel's performance was generally not deficient, and that in any event Fajardo Campos cannot show prejudice from any deficiency.  Accordingly, the Court will deny her motions to vacate and to appoint counsel, and deny an evidentiary hearing.

**<u>Background</u>**

After a jury trial, Fajardo Campos was found guilty on December 18, 2019, of conspiracy to distribute five or more kilograms of cocaine and 500 or more grams of methamphetamine into the United States.  Verdict Form, Dkt. 108.  On July 27, 2021, the Court sentenced Fajardo Campos

to 22 years in prison.  Judgment 3, Dkt. 139.[1]  Following her appeal, the D.C. Circuit affirmed the judgment of conviction and her sentence on May 23, 2025.  United States v. Fajardo Campos, 137 F.4th 840, 846, 857 (D.C. Cir. 2025).[2]  Fajardo Campos sought rehearing en banc after the panel decision, which the D.C. Circuit denied.  United States v. Fajardo Campos, No. 21-3051, 2025 WL 2309027, at *1 (D.C. Cir. Aug. 11, 2025).  On February 5, 2026, Fajardo Campos filed this pro se motion to vacate, set aside, or correct her sentence under 28 U.S.C. § 2255.  Mot. to Vacate, Dkt. 168.  The Court ordered the government to respond and gave Fajardo Campos an opportunity to reply.  See Min. Order (Feb. 9, 2026); Gov't's Opp'n, Dkt. 170; Def.'s Reply, Dkt. 172.[3]  The motion is now fully briefed and ripe for review.

### Legal Standards

A federal prisoner may move the sentencing court to vacate, set aside, or correct the sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States," among other grounds for relief.  28 U.S.C. § 2255(a).  As relevant here, a prisoner must do so within one year of the judgment of conviction becoming final.  28 U.S.C. § 2255(f)(1); see also Clay v. United States, 537 U.S. 522, 527 (2003) (explaining that a judgment becomes final when the time for seeking certiorari expires).  Thus, Fajardo Campos has timely

---

[1] Sentencing followed numerous motions to continue that another judge in this District granted before the case was reassigned to this Court.

[2] Oral argument took place on January 16, 2025, following numerous motions for extensions to briefing deadlines that the D.C. Circuit granted.

[3] Courts have discretion to deny a motion under section 2255 without notifying the government if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b). The fact that the Court ordered the government to respond here should not be taken as any indication of the Court's initial view of the strength of Fajardo Campos's claims.

In reply, Fajardo Campos also expressly moved for the appointment of counsel, which she had requested as a form of relief in her motion to vacate.  See Mot. for Appointment of Counsel, Dkt. 173.

sought relief.  Because Fajardo Campos filed her motion pro se, the Court must also construe it liberally.  See, e.g., Dufur v. U.S. Parole Comm'n, 34 F.4th 1090, 1096 (D.C. Cir. 2022).

Under section 2255, a court must grant a prompt evidentiary hearing unless the record conclusively shows that the prisoner is not entitled to relief.  28 U.S.C. § 2255(b).  The D.C. Circuit, however, has interpreted section 2255 to require a hearing "[o]nly where the . . . motion raises 'detailed and specific' factual allegations whose resolution requires information outside of the record or the judge's 'personal knowledge' or recollection."  United States v. Pollard, 959 F.2d 1011, 1031 (D.C. Cir. 1992) (quoting Machibroda v. United States, 368 U.S. 487, 495 (1962)).  And no hearing is required where the prisoner's claims are "vague, conclusory, or palpably incredible."  Id.  A court that did not preside over the trial may still deny a section 2255 motion without a hearing where the claims are "speculative" or "do[] not necessitate the consideration of any information not within the record or within the memory of the judge ruling on the motion."  United States v. Morrison, 98 F.3d 619, 625-26 (D.C. Cir. 1996)).[4]  The decision on whether to hold a hearing is "committed to the district court's discretion."  Pollard, 959 F.2d at 1031.

Fajardo Campos identifies seventeen bases for relief, all of which relate to alleged ineffective assistance of counsel.  See Def.'s Mem. of Points & Auths. 2-3, Dkt. 168-1 (Def.'s Mem.); U.S. Const. amend. VI (guaranteeing criminal defendants the right to counsel).  She challenges the performance of both her trial counsel and her appellate counsel.  Def.'s Mot. 11, Dkt. 168.  To prevail on such a claim, Fajardo Campos must show (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense."  Strickland v. Washington, 466 U.S. 668, 687 (1984).  Strickland's first prong is satisfied where counsel's performance "fell below an objective standard of reasonableness . . . under prevailing professional

---

[4] This Court presided over the sentencing but not the trial.

norms . . . considering all the circumstances." Id. at 688. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. The second prong requires that the defendant "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," where a "reasonable probability" means "a probability sufficient to undermine confidence in the outcome." Id. at 694. These standards apply equally in the habeas context. Id. at 697.

Ineffective assistance of counsel claims require a fact-finding hearing unless the "record alone conclusively shows that the defendant is entitled to no relief." United States v. Fennell, 53 F.3d 1296, 1303-04 (D.C. Cir. 1995), rev'd on other grounds on reh'g, 77 F.3d 510 (D.C. Cir. 1996) (citing United States v. Wood, 879 F.2d 927, 933-34 (D.C. Cir. 1989)); see also United States v. Sitzmann, 893 F.3d 811, 831-32 (D.C. Cir. 2018) (explaining that evidentiary remand is not needed where (1) record clearly shows no deficiency, (2) record clearly shows no prejudice, or (3) allegations are so vague and conclusory as not to raise colorable claims of deficiency or prejudice); United States v. Sayan, 968 F.2d 55, 66 (D.C. Cir. 1992) (rejecting demand for hearing on section 2255 claim predicated on ineffective assistance of counsel where alleged deficiencies did not prejudice defendant).

## **Application**

Because of the volume of claims, some of which overlap and others of which include multiple alleged grounds for relief, the Court will categorize them according to the stage of the proceeding: pre-trial, trial, sentencing, and appeal. Given that Fajardo Campos is pro se, the Court will also construe her claims liberally where they are only obliquely presented. No claim provides a viable basis for relief, however.

## I.   Pre-Trial

Fajardo Campos makes nine arguments about trial counsel's pre-trial performance, but the record conclusively contradicts her statements.

First, she contends that trial counsel failed to review the indictment or elements of the charges with her and failed to properly inform her of other key case information, including discovery evidence and plea deals.  Def.'s Mem. 5, 8, 14-15; Def.'s Reply App. A at 3-4, Dkt. 172-1.  However, the government points out that government attorneys and agents "confronted Ms. Fajardo, at two reverse proffers, with her intercepted communications, recordings, and evidence of drug seizures."  Gov't's Opp'n Ex. A at 1, Dkt. 170-1.  Trial counsel also filed a notice explaining that he had discussed a plea deal with Fajardo Campos, that she had rejected it at the time because she had not seen all the discovery, and that the government had suggested it would agree to extend the plea deadline.  Def.'s Notice of Status 3, Dkt. 28.

Further, trial counsel stated at a status conference that he had explained the concept of conspiracy to Fajardo Campos and that the government had done so at length.  Tr. 8:4-14, Dkt. 161. Fajardo Campos was present at that status conference, trial counsel stated for the record that she could hear the Spanish translation, and she did not give any indication to the contrary.  Id. at 2:15-18.  Trial counsel also explained at another status conference that he had seen Fajardo Campos the night before and planned to go over discovery in person with her so that she could understand the volume, substance, and details of the evidence.  Tr. 11:13-22, 12:16-18, Dkt. 145. Again, she was present at that status conference, trial counsel said that she could hear the Spanish translation, and she did not indicate otherwise.  Id. at 2:13-14.  And at the final pretrial conference,

trial counsel stated that he had reviewed certain evidence with Fajardo Campos, and she again made no indication that she could not understand or disputed that assertion. Tr. 55:8-11, Dkt. 148.[5]

Second, she appears to make several arguments specifically related to her actual entry of a plea, none of which are availing either. For one, any claims by Fajardo Campos based on having entered a guilty plea are plainly unmeritorious because she pled not guilty and was convicted by a jury at trial. Contrast Def.'s Mem. 5-6 (claiming that trial counsel forced her to plead guilty), with Verdict Form, Dkt. 104. Next, insofar as she argues that her constitutional rights were violated because her not guilty plea was unknowing, unintelligent, and involuntary, there was no violation because she received a jury trial, as guaranteed by the Sixth Amendment absent any waiver. Contrast Def.'s Mem. 7, with Brady v. United States, 397 U.S. 742, 748 (1970) (holding that a guilty plea must be voluntary, knowing, and intelligent in part because it constitutes a waiver of the right to a trial). And finally, to the extent that she contends that her trial counsel overbore her will as to her choice of plea, contrast Def.'s Mot. 6, 8 (claiming that she entered not guilty plea at "counsel['s] direction[]"), with Def.'s Reply App. A at 4 (claiming that trial counsel "pressured [her] to plead guilty" and "kept insisting [she] was guilty"), she has failed to offer any "detailed and specific" allegations in support of that claim, Pollard, 959 F.2d at 1031 (quotation omitted).

Even were there any indication of deficient performance, Fajardo Campos cannot show prejudice. Having rejected a plea deal and gone to trial, to demonstrate Strickland prejudice:

> [A] defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would

---

[5] The record consistently demonstrates that a courtroom interpreter provided translation assistance at each proceeding and Fajardo Campos never objected to trial counsel's representations in those proceedings that he had communicated with her in Spanish and reviewed documents translated into Spanish. See, e.g., May 17, 2018, Status Conf. Tr. 2:16-18, 6:10-16, Dkt. 161; Trial Tr. 1120:12-14, Dkt. 154; Sent'g Tr. 6:2-4, Dkt. 156. The Court therefore rejects Fajardo Campos's arguments that she was denied effective assistance of counsel at each stage of the proceeding owing to failures of language interpretation and translation. See Def.'s Mem. 10-12, 14.

have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Lafler v. Cooper, 566 U.S. 156, 164 (2012). Here, the Court sentenced Fajardo Campos to 264 months in prison, which is well below the guidelines range of life in prison. Contrast Judgment 3, Dkt. 139, with Fajardo Campos, 137 F.4th at 855, 856 (noting twice that the guidelines range determined by the Court at sentencing was life imprisonment). Fajardo Campos has made no suggestion that the plea deal she was offered would have led to a guidelines range of less than the 264 months of prison time that she received, and the Court would have been reticent to accept any such plea deal given the massive quantities of drugs involved. See Fed. R. Crim. P. 11(c)(3) (providing that courts may reject binding plea agreements or not follow non-binding recommendations or requests); Sent'g Tr. 8, Dkt. 156 (finding that Fajardo Campos was responsible for at least 3,000 kilograms of cocaine).

Third, she alleges that trial counsel failed to investigate facts. See Def.'s Mem. 8, 12, 16. The facts that allegedly went uninvestigated were the "arrest, investigative reports," "search and seizure warrants," and "bribery accusation." Id. at 8, 16.[6] In evaluating counsel's performance, courts are to "apply a heavy measure of deference to counsel's judgments" on "a particular decision not to investigate." Strickland, 466 U.S. at 691. And to show prejudice a defendant "must make 'a comprehensive showing as to what information the investigation would have produced,' and how this information 'would have produced a different result.'" United States v. Bertram, 209

---

[6] There is also mention of failure to assist Fajardo Campos with "an investigator or investigation" during "the 36-hour hearing with the District Attorney." Def.'s Decl. ¶ 11, Dkt. 168-2. Construing the complaint liberally to refer to the U.S. Attorney, there is no indication anywhere in the record of a 36-hour hearing. Without more specificity, that allegation strikes the Court as "vague, conclusory, and palpably incredible." Pollard, 959 F.2d at 1031. In reply, Fajardo Campos states that she spent 36 hours in interviews with prosecutors. Def.'s Reply App. A at 3. Again construing her filing liberally, the Court infers that she is referring to the cumulative time spent in proffer sessions, but there is no entitlement to investigatory assistance during such sessions.

F. Supp. 3d 243, 256 (D.D.C. 2016) (quoting United States v. Askew, 88 F.3d 1065, 1073 (D.C. Cir. 1996)).  Here, Fajardo Campos simply gestures toward certain issues, which is not enough. As icing on the cake, the Court also notes that trial counsel's motions to suppress wiretap communications, emails, and a recorded jail call evince a detailed understanding of relevant facts. See Def.'s Mot. to Suppress Intercepted Elec. Commc'ns, Dkt. 33; Def.'s Mot. to Suppress Emails, Dkt. 52; Def.'s Mot. in Limine Concerning Def.'s Recorded Jail Call, Dkt. 90.

Fourth, Fajardo Campos argues that trial counsel should have challenged the indictment, search and seizure, and arrest.  Def.'s Mot. 5; Def.'s Mem. 8.  As just explained, trial counsel brought several motions to exclude certain evidence.  And trial counsel secured an agreement from the government not to introduce certain post-arrest statements, cellphone contents, and foreign wiretap evidence in its case-in-chief.  Def.'s Notice re Mots., Dkt. 53.  Moreover, "counsel does not perform deficiently by declining to pursue a losing argument."  United States v. Watson, 717 F.3d 196, 198 (D.C. Cir. 2013).  Instead, counsel has "wide latitude" to "mak[e] tactical decisions." Strickland, 466 U.S. at 689.  Fajardo Campos does not explain—nor can the Court discern—any basis for challenging the indictment or arrest here.[7]

Fifth, Fajardo Campos alleges ineffective assistance from failure to challenge venue. Def.'s Mem. 15.  But the D.C. Circuit held that there was no plain error as to venue, explaining that Congress "provide[d] for venue in the District of Columbia" and that the relevant venue provision "applies here."  Fajardo Campos, 137 F.4th at 848-49; see also 18 U.S.C. § 3238 (providing that an indictment may be filed in the District of Columbia for extraterritorial crimes where there is no last known residence and an offender has not yet been arrested or brought into

_____

[7] An indictment "need only inform the defendant of the precise offense of which he is accused."  United States v. Verrusio, 762 F.3d 1, 13 (D.C. Cir. 2014).  And as to her arrest, Fajardo Campos was originally arrested in Colombia and then herself agreed to extradition to the United States.  See Trial Tr. 548:8-12, Dkt. 150; Fajardo Campos, 137 F.4th at 846.

8

any district).[8]  The Circuit also relied on United States v. Gurr, 471 F.3d 144, 155 (D.C. Cir. 2006), noting that there—as here—the defendant was indicted in the District of Columbia before being arrested or extradited, so venue was proper.  Fajardo Campos, 137 F.4th at 849.  Thus, trial counsel's performance was not deficient for failure to pursue this losing argument.  See Watson, 717 F.3d at 198.

Sixth, she arguably contends that trial counsel sought to "[r]ush" her case, Gov't's Opp'n 7, because she claims he "exhibited his desire to [reach] a speedy disposition of [her] case," Def.'s Mem. 7.  Of course, a diligent defense attorney would seek to vindicate his client's right to a speedy trial.  See U.S. Const. amend. VI; 18 U.S.C. § 3161.  And in any event, here trial counsel sought multiple continuances to better represent Fajardo Campos's interests.  See, e.g., Order for Competency Evaluation, Dkt. 78 (granting trial continuance to allow for mental competency evaluation); Mot. to Continue Trial, Dkt. 98 (seeking trial continuance to have more time to review Jencks Act material).

Seventh, Fajardo Campos claims that trial counsel "was disinterested and half-heartedly representing" her, Def.'s Decl. ¶ 4, Dkt. 168-2, misled and deceived her, Def.'s Mem. 6, and failed to object to errors or preserve arguments for appeal, Def.'s Mot. 9; Def.'s Mem. 8.  However, she provides no "detailed and specific" allegations in support of any of these three claims.  Pollard, 959 F.2d at 1031.[9]

---

[8] The plain error test also incorporates Strickland's prejudice standard in analyzing whether any error affected a defendant's substantial rights.  United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004), cited by Sitzmann, 893 F.3d at 830.  But the D.C. Circuit did not expressly state whether it rejected Fajardo Campos's claim because (1) there was no error, (2) any error was not plain, (3) any plain error did not affect her substantial rights, or (4) any such error nevertheless did not seriously affect the fairness of the proceedings.  See Sitzmann, 893 F.3d at 830 (setting out the four prongs of the plain error test).

[9] Insofar as the objection and preservation argument pertains to trial rather than pre-trial performance, trial counsel did lodge numerous objections, which the Court often sustained.  E.g., Trial Tr. 606:18-19, 614:25-615:1, 624:22-626:3, Dkt. 151.  Fajardo Campos also expressly makes this argument as to sentencing, but the same lack of detail applies.  And as the government points out, trial counsel did preserve multiple arguments at sentencing.  See

Eighth, in reply, Fajardo Campos asserts that trial counsel "mocked" and "ignored" her, "became impatient" with her, and "yelled at [her] to stop crying" when her mother became ill. Def.'s Reply App. A at 4-5. The Court finds these allegations of unprofessional conduct to be "palpably incredible," Pollard, 959 F.2d at 1031, especially given that Fajardo Campos went on to say at trial that she "trust[ed] [her] attorney completely" and that "he [wa]s [her] voice," Trial Tr. 1265:17-18, Dkt. 154.

Ninth, also in reply, Fajardo Campos claims that trial counsel refused to allow her to change attorneys. Def.'s Reply App. A at 4-5. The Court likewise finds this allegation to be "palpably incredible," Pollard, 959 F.2d at 1031, particularly because she also alleges that she "filed complaints with the court requesting a Spanish-speaking attorney," Def.'s Reply App. A at 5, so the trial judge would have learned of and resolved any actual request to change counsel. Indeed, Fajardo Campos did change attorneys twice—trial counsel was her third attorney. See Minute Entry (May 2, 2017) (granting motion to withdraw); Minute Order (Mar. 26, 2018) (granting motion to withdraw).

## II.    Trial

Fajardo Campos makes four arguments about the trial phase of her case, all of which are conclusively belied by the record.

First, she claims that trial counsel was ineffective for failing to object to the government's case agent sitting at counsel table during trial. Def.'s Mem. 9-10. But the second exception to Federal Rule of Evidence 615 "allows the government to designate a law enforcement officer to remain in the courtroom as the government's representative." United States v. Sullivan, 56 F.3d

---

Gov't's Opp'n 18 (citing Sent'g Tr. 10:19-21, 32:3-9, Dkt. 156 (preserving arguments as to non-commercial aircraft and drug premises enhancements)). For good measure, Fajardo Campos's appellate counsel also took steps to preserve arguments where appropriate. See Fajardo Campos, 137 F.4th at 848.

1532, 1995 WL 364662, at *2 (D.C. Cir. 1995) (unpublished table decision) (citing cases).  Again, "counsel does not perform deficiently by declining to pursue a losing argument."  Watson, 717 F.3d at 198.  Moreover, it appears that trial counsel may have agreed not to object in exchange for the government not presenting certain evidence in its case-in-chief, see Def.'s Notice re Mots., which is the kind of "tactical decision[]" that counsel has "wide latitude" to make, Strickland, 466 U.S. at 689.  And it is far from clear how Fajardo Campos was prejudiced by this decision.

Second, she claims that trial counsel deprived her of her right to testify at trial.  Def.'s Mem. 12-13.  However, the trial record reveals that the Court made clear to Fajardo Campos that she had the right to testify and that it was her "decision alone" as to whether or not to exercise that right.  Trial Tr. 1265:2-16, Dkt. 154.  The Court then directly asked Fajardo Campos if it was her decision not to testify, to which she responded "[y]es."  Id. 1267:2-3.  Thus, the record plainly reflects that Fajardo Campos had an opportunity to testify and declined to do so.  In any event, there is no indication under Strickland's second prong of a reasonable probability that the result would have been different had she testified.

Third, she contends that trial counsel was ineffective for failing to request a jury instruction requiring that the jury determine whether the government proved the single conspiracy charged in the indictment rather than multiple conspiracies.  Def.'s Mem. 15.  But the D.C. Circuit directly resolved this issue, holding that trial counsel's performance was not deficient.  Fajardo Campos, 137 F.4th at 853.  Therefore, this argument is foreclosed on collateral review.  See United States v. Greene, 834 F.2d 1067, 1070 (D.C. Cir. 1987).

Fourth, she objects to trial counsel not arguing for the "benefit of any new rules, or laws."  Def.'s Decl. ¶ 8.  It is not clear whether she is arguing that trial counsel failed to refer to recent

rules or law or failed to advocate for changes to the rules or law.  Either way, she provides no "detailed and specific" allegations in support of her claim.  Pollard, 959 F.2d at 1031.

### III.    Sentencing

Fajardo Campos challenges seven aspects of the sentencing proceeding: the (1) drug weight calculation, (2) non-commercial aircraft enhancement, (3) bribery enhancement, (4) drug-premises enhancement, (5) leadership role enhancement, (6) forfeiture order, and (7) right to speak.  None of her claims holds water.

For one, trial counsel did raise objections as to the non-commercial aircraft enhancement, Sent'g Tr. 10:4-12:17, bribery enhancement, id. at 28:5-30:22, drug-premises enhancement, id. at 31:19-32:9, leadership-role enhancement, id. at 38:1-41:1, and forfeiture order, id. at 81:7-20. Moreover, the D.C. Circuit found no plain error as to those five issues, assuming error and finding no prejudice as to the non-commercial aircraft, drug-premises, and leadership-role enhancements, and rejecting Fajardo Campos's assessment of the evidence as to the bribery enhancement and forfeiture order.  Fajardo Campos, 137 F.4th at 854-57.  Thus, these claims fail at least one if not both Strickland prongs.

The D.C. Circuit deemed the drug weight calculation challenge forfeit for not being raised below, id. at 854, so it remains potentially viable as an ineffective assistance of counsel claim.  At sentencing, the Court found—"using a fairly low estimate"—that Fajardo Campos was responsible for 3,000 kilograms of cocaine, corresponding to 600,000 kilograms of converted drug weight, and 10 kilograms of methamphetamine, corresponding to 20,000 kilograms of converted drug weight. Sent'g Tr. 8:12-19.  In turn, that total of 620,000 kilograms of converted drug weight was "well in excess" of the 90,000 kg of converted drug weight necessary for a base offense level of 38.  Id.

Trial counsel did not object to the <u>cocaine</u> drug weight calculation in the presentence investigation report or base offense level determination because the trial evidence made it "impossible" to argue that the 10-year mandatory minimum did not apply based on the <u>methamphetamine</u> amounts.   Sent'g Tr. 9:4-10; <u>see also</u> 21 U.S.C. § 960(b)(1)(B)(ii), (H) (imposing 10-year mandatory minimum for violation involving 5 kilograms or more of cocaine or 500 grams or more of methamphetamine).  That logic does not make sense because a challenge to the drug weight calculations could still have affected Fajardo Campos's guidelines range.  Under the guidelines, a base offense level of 38 and a criminal history score of I correspond to a sentencing range of 235-293 months in prison, far in excess of the 120 months required by the 10-year statutory minimum.  <u>See</u> U.S.S.G. Ch. 5 Pt. A (2018).

Nevertheless, based on the trial evidence, the Court remains of the view that 3,000 kilograms of cocaine was a "fairly low estimate" of the amount for which Fajardo Campos was responsible.  She has neither pointed to any evidence to contradict that assessment nor made any detailed and specific allegations that she would be able to uncover such evidence through an evidentiary hearing or other discovery.  Moreover, to fall below the 90,000 kilograms of converted drug weight level, she would have had to be responsible for less than 450 kilograms of cocaine (entirely setting aside the methamphetamine), so the Court would have had to overattribute almost seven times the correct weight of cocaine to Fajardo Campos.  Without any specificity as to why that calculation was drastically incorrect, the Court is unconvinced that it was so mistaken.  And again, the Court still imposed a sentence well below life in prison, which would have remained the relevant guidelines range for a somewhat lower level of attributed cocaine.  <u>Cf.</u> <u>Fajardo Campos</u>, 137 F.4th at 855 (noting that the guidelines "sentence would be life imprisonment even without one or two of the sentencing enhancements").  Thus, although trial counsel erred as to why a

13

challenge to the drug weight calculation was futile, Fajardo Campos was not prejudiced by that error because she cannot show a reasonable probability that the result of her sentencing would have been different.  See United States v. Abney, 812 F.3d 1079, 1086 (D.C. Cir. 2016).

Finally, Fajardo Campos alleges that trial counsel denied her the right to speak at her sentencing.  Def.'s Mot. 5-6; Def.'s Mem. 12-13; Def.'s Decl. ¶ 27.  That allegation is plainly contradicted by the record, which reflects that the Court gave Fajardo Campos the opportunity to speak at her sentencing and that she did so.  Sent'g Tr. 56:15-66:24.

## IV.    Appeal

Fajardo Campos only mentions appellate counsel in her motion to say that she was "intimidated" by both him and trial counsel.  Def.'s Decl. ¶ 34.  Suffice it to say, that is not the kind of "detailed and specific" allegation that might support a claim of ineffective assistance of appellate counsel on collateral review.  Pollard, 959 F.2d at 1031.

In reply, Fajardo Campos claims that appellate counsel "never communicated properly with [her] or [her] family and handled appeals without informing [her]."  Def.'s Reply App. A. at 5.  Even if that were true and satisfied Strickland's performance prong, Fajardo Campos fails to allege prejudice.  And the Court can discern no basis for thinking that more communicative counsel would have led to a reasonable probability of a different outcome for her appeal.

Lastly, in reply, Fajardo Campos claims that appellate counsel made "false claims that [she] spoke English," which led to her being "punished in detention" and "denied phone privileges for a month."  Id.  She further alleges that he "attempted to charge [her] for helping with [her] appeal," including by getting another individual to call her and "suggest[]" that she "sell [her] house."  Id.  The Court finds these offhand, vague, and belated allegations of serious wrongdoing

14

to be "palpably incredible."  Pollard, 959 F.2d at 1031.  Moreover, the allegations are not relevant to either performance or prejudice with respect to Fajardo Campos's conviction or sentence.

* * *

Because Fajardo Campos's motion raises no "'detailed and specific' factual allegations whose resolution requires information outside of the record," id., the Court will deny her request for an evidentiary hearing as well as her request for discovery, including interrogatories and document production, see Def.'s Mem. 17-18.  The Court will also deny Fajardo Campos's motion for the appointment of counsel and request for leave to amend the motion to vacate.[10]

## CONCLUSION

For the foregoing reasons, the Court will deny Fajardo Campos's motions.  A separate order will accompany this opinion.



/s/

JOHN D. BATES
United States District Judge

Date: April 10, 2026

---

[10] There is generally no constitutional right to counsel in collateral proceedings.  See United States v. Scurry, 992 F.3d 1060, 1069 (D.C. Cir. 2021) (citing Garza v. Idaho, 586 U.S. 232, 245 (2019)).  To be sure, "[t]he Supreme Court has left open the possibility that an individual could have a constitutional right to effective counsel in collateral proceedings when those proceedings provide the first opportunity to raise a claim of ineffective assistance of trial counsel."  Id. n.2.  But here, Fajardo Campos had separate appellate counsel and in fact did raise an ineffective assistance of trial counsel claim on direct appeal.  See Fajardo Campos, 137 F.4th at 853.

Courts may, nevertheless, appoint counsel for indigent defendants seeking relief under 28 U.S.C. § 2255 when "the interests of justice so require."  18 U.S.C. § 3006A(a)(2)(B).  "The 'interests of justice' inquiry is 'peculiarly context-specific'" and entrusted to district courts' discretion.  Scurry, 992 F.3d at 1069 (quoting Martel v. Clair, 565 U.S. 648, 663 (2012)).  Here, the interests of justice would not be served by appointing counsel because, even construing Fajardo Campos's claims liberally, the record conclusively shows that she is not entitled to relief.  Thus, the Court finds that appointing counsel would be "futile."  Martel, 565 U.S. at 666.

Courts also have discretion to reject requests for leave to amend section 2255 motions in accordance with Federal Rule of Civil Procedure 15(a), bearing in mind Congress's concerns about "finality" and its decision to "expedite" collateral proceedings.  Mayle v. Felix, 545 U.S. 644, 657, 663 (2005).  Because Fajardo Campos does not explain how she would (or could) amend her motion and the record conclusively belies her claims, the Court finds that justice does not require granting leave to amend.